UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

THOMAS E. PEREZ, SECRETARY OF
LABOR, UNITED STATES DEPARTMENT
OF LABOR,

6:12-cv-1474-TC (Lead Case)
6:12-cv-1566-TC (Trailing Case)
6:13-cv-1439-TC (Trailing Case)

Plaintiff,

FINDINGS AND
RECOMMENDATION

v.

PAN-AMERICAN BERRY GROWERS, LLC,
an Oregon limited liability company,

Defendant.

COFFIN, Magistrate Judge:

Defendants, Pan-American Berry Growers, LLC. and B&G Ditchen, LLC., Robert Ditchen,

and Gregg Ditchen (collectively "the Ditchens"), seek to vacate their respective consent judgment

and orders entered into between the individual defendants and plaintiff, Thomas E. Perez and the

United States Department of Labor ("DOL").

## I. BACKGROUND

Pan-American, in 2012, grew about 2 million pounds of fresh blueberries at its 165 acre

Salem, Oregon farm. At the time of the contested action, it claims to have had about $3-4 million

Page 1 - FINDINGS & RECOMMENDATION

worth of berries in storage or still growing in the fields (with half set to be frozen). All apparently picked by hand or to be hand-picked. Pan-American asserts it had 280 seasonal workers and paid about $1.4 million to labor contractor Ezequiel Labor.

The Ditchens' farm is about 150 acres and is located in North Howell, Oregon. The Ditchens claim about $2.5 million worth of berries in storage and in the fields were held up during the time of the contested action. The Ditchens assert they had 310 seasonal workers at the time.

The DOL initiated an investigation on July 28, 2012, at the Pan-American Salem farm when there were about 200 pickers in the field. The DOL interviewed about 10% of the workers. DOL also reviewed pay roll records on July 30 and 31, 2012. The DOL claims multiple workers were using the same picker card.[1] Pan-American asserts only two workers were actually observed picking on the same card. The DOL performed a similar investigation, beginning on July 30, 2012, at the Ditchens' farm whose labor contractor was Manual Urendas.

The DOL utilized, according to defendants, a formula based on the average berries picked by the workers over a one-month period and determined that any workers that picked more than the average over the season must have been supported by "ghost workers" who did not submit picker cards to Pan-American. Using this methodology, Pan-American states that DOL determined that 287 ghost workers had been working on Pan-American's farm over the period of July 6, 2012, through August 2, 2012, based on the volume of berries picked.

---

[1] Both defendants utilized piece rate workers. Piece rate employees are paid based on the number of units produced and track units with a "ticket" or "picker card." Piece rate work still must comply with minimum wage laws. Both defendants used labor contractors to hire and supervise the seasonal agriculture workers and payroll records were kept through the labor contractors.

Page 2 - FINDINGS & RECOMMENDATION

On August 2, 2012, DOL called Pan-American representatives about possible violations and faxed over a hot goods objection[2] which would require a consent decree to get lifted. On August 3, 2012, downline purchasers had been informed, and they agreed, on August 6, 2012, not to take shipment. On August 7, 2012, DOL drafted a consent decree and Pan-American provided minimal changes. A final consent decree was signed on August 9, 2012, finding $41,778.15 in back wages due and assessing a penalty of $7,040.00. The DOL lifted the hot goods objection on August 9, 2012, which had held up about 400,000 pounds of berries and delayed picking for 7 days which amounts to an additional 30-50,000 pounds of berries not picked per day.

On August 3, 2012, the DOL supplied a spreadsheet of alleged violations to the Ditchens representatives asserting multiple workers picking on the same cards based on the ghost worker methodology. On August 4, 2012, the DOL stated if the Ditchens sent a check for the back wages and penalty, the objection would be lifted. DOL claimed 810 workers were owed back wages and asserted other migrant worker violations. The Ditchens paid $156,616.00 in back wages and a $13,200.00 penalty on August 6, 2012. On August 7, 2012, the DOL lifted the hot goods objection. The consent decree was signed on August 17, 2012. The Ditchens claims they lost $89,712.41 in revenue based on rotting berries and overripe berries during the imposition of the hot goods

---

[2] The hot goods provisions of the FLSA make it illegal to ship goods in commerce that were produced in violation of the minimum wage and overtime requirements of the Act. The "goods" covered by the "hot goods" provision can include agricultural goods or any other product sold or shipped in interstate commerce. See 29 U.S.C. 203(I). When "hot goods" have been identified, plaintiff notifies the violating employer that the goods are "hot" and requests the employer to refrain from shipping them in commerce, which is known as the "hot goods" objection. After discussion with the employer, plaintiff may also notify all intended recipients of the goods of the investigation findings. If the employer does not comply, the Secretary of Labor cannot stop the shipment on his own, but may seek to obtain an order in federal district court enjoining the shipment of the "hot goods." See 29 U.S.C. § § 211(a), 215(a)1, 217.

Page 3 - FINDINGS & RECOMMENDATION

objection.

The DOL filed a complaint against Pan-American on August 14, 2012, and against the Ditchens on August 30, 2012, alleging that the individual defendants violated the FLSA by paying employees less than the minimum wage and failing to "maintain, keep, make available... and preserve records of employees." The court signed the Pan-American consent judgment following a Joint Motion to Approve Consent Judgment on August 18, 2012. The court signed the Ditchens consent judgment on August 30, 2012 following a Joint Motion to Approve Consent Judgment. Pan-American and the Ditchens moved to vacate the consent judgments on August 15, 2013, and filed a complaint against the DOL on August 16, 2013, seeking essentially the same relief.

## II. DISCUSSION

Federal Rule of Civil Procedure (FRCP) 60(b) governs motions for relief from judgment. Under the rule, the court may relieve a party from judgment for any of the following six enumerated reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

For purposes of FRCP 60(b), a consent judgment is equivalent to a final judgment, even though a consent judgment stems from an agreement between the parties, rather than a decision rendered on the merits. Rufo v. Inmates of Suffolk Cnty. Jail, 502 U.S. 367, 391 (1992) (describing

how consent judgments are "subject to the rules generally applicable to other judgments and decrees," including Rule 60).

Defendants argue that the court should vacate the consent judgments under either FRCP 60(b)(3), FRCP 60(b)(4), or FRCP 60(b)(6), because defendants were under duress when they signed their respective consent judgments and because the consent judgments violate their due process rights.

## A. FRCP 60(b)(3)

Under FRCP 60(b)(3), a court may relieve a party from judgment for reason of fraud, misrepresentation, or misconduct by an opposing party. However, a party seeking to vacate a final judgment under this rule must move to vacate within a "reasonable time" after the entry of the final judgment and "no more than a year after the entry of the judgment or the date of the proceeding."[3] FRCP 60(c). What amounts to a "reasonable time" is dependent upon the facts of the case. See Ashford v. Stewart, 657 F.2d 1053, 1055 (9th Cir. 1981) (per curiam); and In re Pac. Far E. Lines, Inc., 889 F.2d 242, 249 (9th Cir. 1989). In determining what is reasonable, courts should "tak[e] into consideration the interest of finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." Ashford, 657 F.2d at 1055.

Defendants argue that their Rule 60(b)(3) motions are timely because they were filed within the one-year outer limit for such motions. Defendants also argue that their Rule 60(b)(3) motions were filed within a reasonable amount of time. Rather than immediately moving to vacate,

---

[3]  The one-year requirement is merely an outer limit and does not abrogate the requirement that the motion be brought within a reasonable time. See Planet Corp. v. Sullivan, 702 F.2d 123, 126 (7th Cir. 1983); and Ashford, 657 F.2d at 1055.

Page 5 - FINDINGS & RECOMMENDATION

defendants state that they chose to track the efforts of groups who were attempting to acquire additional information, through Freedom of Information Act ("FOIA") requests, on the scope of plaintiff's authority under the hot goods provision and the method with which plaintiff computed the wage and hour violations. Defendants note that the Oregon Farm Bureau Federation has recently filed a lawsuit under FOIA related to plaintiff's failure to provide any information on the scope of authority and the methodology used to calculate penalties. Defendants note that they needed this information to file their motions to vacate, but were ultimately forced to file the motion to avoid the one-year bar.

Plaintiff responds that defendants' choice to seek non-judicial redress for their perceived wrongs does not excuse their delay in seeking to vacate the judgment and that defendants cannot allege that they only recently learned of the bases upon which they seek to have the consent judgment vacated.

While the defendants were aware of the coercive nature utilized by the DOL at the time the consent judgments were entered, the nature of their operations combined with DOL's departure from its previous course of conduct in using the hot goods objection with respect to perishable goods complicated defendants' analysis of how to proceed in challenging the DOL and the judgments it obtained.

The DOL had previously allowed an alleged violator to place the proposed back wages and penalty into escrow to allow the hot goods objection to be lifted while the violations were litigated. However, the defendants were caught off guard in these cases when the DOL changed its tactics and insisted on a consent decree before lifting the objections. While the proposed back wages and penalty were substantial, the potential losses due to a continuing hot goods objection pending

Page 6 - FINDINGS & RECOMMENDATION

litigation dwarfed the proposed judgments' impact on defendants. The defendants, as discussed

below, were left with no choice but to accept the judgments. Moreover, given the DOL's new

posture it is not inconceivable that mounting an attack on the judgment, without further information,

could have had uncertain repercussions for the defendants in any future interactions with the DOL

in view of its more aggressive tactics.

Certainly the defendants could have sought to seek a TRO from the court to lift the hot goods

objections so that they could litigate the correctness of the methodology utilized by the DOJ to

determine wage violations. However, the nature of defendants' business made delays of even a day

or two significant and, while this court may well have granted a TRO under the circumstances,

defendants could not be assured of success. The court is aware of possible hardships placed upon the

DOL having to reconstruct its investigation at this late date. Nonetheless, given the DOL's alleged

lack of willingness to share information about its methodology at the outset, the onus created by

delay in seeking to vacate is not unreasonable. Under the circumstances, the court does not find that

defendants' decision to bolster their position through obtaining more information on the methodology

via FOIA requests causes sufficient prejudice to deny the motions to vacate.[4] Accordingly, the court

---

[4] The court notes that, generally, a party who fails to raise a duress defense to a bargained-for-agreement for an unreasonable period of time while enjoying the benefits of the agreement waives the defense of duress. See Guinn v. Sumpter Valley Ry. Co., 63 Or. 368, 376 (1912) (where a party attempts to undo a contract on the basis that the contract was entered into under duress "the party so attempting to set aside the same must act promptly. If he remains silent for an unreasonable length of time... he will be held to have elected to waive the duress and ratify the contract"). However, defendants only benefit was a return to the position they enjoyed prior to the DOL's investigation that necessitated the hot goods objection. This was not a benefit conferred upon them by the DOL so much as it was a promise not to destroy the businesses if defendants agreed not to contest the allegedly faulty methodology.

Page 7 - FINDINGS & RECOMMENDATION

addresses the merits of defendants' assertions of government misconduct in obtaining the consent decrees.

For a motion to be cognizable under FRCP 60(b)(3), the opposing party must engage in fraud, misrepresentation or misconduct that is "extrinsic or collateral to the matters involved in the action." Green v. Ancora-Citronelle Corp., 577 F.2d 1380, 1384 (9th Cir. 1978). The conduct must have the effect of "prevent[ing] a party from having an opportunity to present his claim or defense in court." Id.; see also Rozier v. Ford Motor Co., 573 F.2d 1332, 1339 (5th Cir. 1978).

Fraud is extrinsic where "it prevents a party from having an opportunity to present his claim or defense in court or deprives a party of his day in court." Bailey v. Internal Revenue Service, 188 F.R.D. 346, 354 (D. Ariz. 1999), aff'd sub nom., Bailey v. U.S. Internal Revenue Service, 232 F.3d 893 (9th Cir. 2000). Obtaining a judgment against a party through coercion or duress may constitute extrinsic fraud. Id.; see also Portnoy v. U.S. Bank NA, 2007 WL 4258829, at *3 (E.D. Cal. Dec. 3, 2007).

Under Oregon law, duress is an unlawful constraint on a person whereby he is forced to do some act against his will. Horn v. Davis, 70 Or. 498, 505, 142 P. 544 (1914). Oregon law specifically recognizes economic duress or business compulsion as a form of duress. See, e.g., Capps v. Georgia-Pacific Corp., 253 Or. 248, 453 P.2d 935 (1969); Oregon Bank v. Nautilus Crane & Equip. Corp., 68 Or. App. 131, 142-143, 683 P.2d 95 (1984).

There are three elements to a prima facie case of economic duress: "(1) wrongful acts or threats; (2) financial distress caused by wrongful acts or threats; and (3) the absence of any reasonable alternative to the terms presented by the wrongdoer." Id. at 142-43.

Although the government's use of the hot goods authority is authorized by statute to resolve wage and hour violations, applying such authority to perishable goods in this situation, in effect, prevented defendant's from having their day in court.

### 1. Wrongful Acts or Threats

As noted above, the hot goods objection effectively eliminates any potential market for the goods in question during the duration of the objection. In this case, the goods have a very limited period of marketability due to the perishable nature of blueberries. Indeed, the goods have a very limited period of time in which they can be harvested even before they can be brought to market. As such, delay in the harvest and marketing could devastate a company that produces blueberries.

Although the DOL has exercised its hot goods authority with respect to agricultural goods since the 1950s, it was not common in the Northwest until about 2011. Moreover, prior to the instant cases, it appears that the DOL generally engaged in a process in which the alleged violator placed the full amount of the proposed penalties and back pay into escrow to permit lifting of the objection pending litigation. However, in these cases, in order to get the objections lifted, the DOL required defendants to completely waive their right to administrative processes including a hearing, admit violations and pay penalties and back wages with no formal investigative findings or explanation of the DOL's calculations. In essence, to avoid the potential loss of millions of dollars worth of berries, defendants had to agree to the DOL's allegations without an opportunity to present a defense or confront the DOL's evidence in an administrative or court hearing. While settlement in lieu of litigation is not an unusual method for litigants to resolve a case in certain circumstances, when one party must agree to a comparatively minor penalty or lose millions

Page 9 - FINDINGS & RECOMMENDATION

simply to engage in the judicial process, such heavy handed leverage is fraught with economic

duress brought about by an unfair advantage.  Cf. Comcast of Oregon II v. City of Eugene, 211

Or. App. 573, 576, 586-87 (2007) (a threat to take action that is within the person's legal power

can constitute duress if the power is used to induce a party, via an immediate threat, to pay an

invalid fee).  Because of the manner in which the DOL exacted a penalty and back wages from

defendants, the validity of the DOL's calculation could not be determined through any sort of

deliberate process.[5]

### 2. Financial Distress

Defendants meet the financial distress element of duress. Defendants agreed to the terms

of the consent judgment to avoid the egregious economic harm that would result from the hot

goods objection remaining in place.

### 3. Reasonable Alternatives

The standard for determining whether reasonable alternatives existed is an objective one

"under which account must be taken of the exigencies in which the victim finds himself."

Comcast II, 211 Or. App. at 588 (quoting Restatement (Second) of Contracts § 175 comment b

(1981)). Therefore, a significant factor for courts to consider in determining "whether reasonable

---

[5] Indeed, the manner in which the DOL has employed the hot goods objection to
perishable items has caught the attention of Congress. United States Representative Kurt
Schrader has introduced legislation to amend the hot goods statute to exempt perishable
agricultural products.  Of course, it could be argued that such recognition by Congressman
Schrader implies that the use of the objection in this manner is currently statutorily permissible.
However, the Constitution's due process requirements also prohibit the alleged duress at play in
these cases.

alternatives existed is the immediacy of the threatened financial distress." Comcast II, 211 Or.

App. at 587.

It could be argued, as suggested above, that defendants could have sought a TRO to lift

the hot goods objections and permit review of the DOL's assessment.  Moreover, defendants

could have sought to challenge the judgment sooner.  However, the DOL's imposition of the hot

goods objection to highly perishable goods and requirement of immediate admission of defeat

without any recourse to the courts unfairly stacked the deck against the Ditchens and Pan-

American.  Given the nature of the business in which defendants engaged, it is not difficult to

understand why they would conclude that resort to such options without further information

would be extremely risky given the potential staggering economic losses.  Moreover, this court

can think of no good reason in support of the DOL's decision to refuse the accommodation of

having defendants place the penalties and wages at issue in escrow as a condition of lifting the

hot goods objection pending administrative and court review.   Given the economic duress placed

upon defendants in order to secure the consent judgments, the judgments should be vacated under

FRCP 60(b)(3) and the cases reopened.

B.      The Ditchens and Pan-American's Contract Action

The Ditchens and Pan-American have also filed a separate complaint seeking rescission

of the consent judgments.  However, because the issue is more appropriately decided under

FRCP 60 and relief sought should be granted under that rule, the DOL's motion to dismiss the

complaint should be granted.  All other pending motions in this separate action are denied.

II.CONCLUSION

Page 11 - FINDINGS & RECOMMENDATION

For the reasons stated above, defendants' motions to vacate their respective consent judgments (#5 in 12-1474-TC and #5 in 12-1566-TC) should be granted and the DOL's motion to dismiss (#32 in 13-1439-TC) should be granted.  In addition,  defendants' motions to postpone hearings (#s 29 and 34 in 12-1566-TC, #s 32 and 37 in 12-1474-TC, and #s 15 and 24 in 13-1439-TC) are denied.  Finally, the DOL's motion to stay its response to the Ditchens and Pan-American's complaint (#25 in 13-1439-TC) is denied as moot.

This recommendation as to the dispositive motions is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this _15t_ day of January, 2014.

THOMAS M. COFFIN
United States Magistrate Judge